IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

JAQUELINE A. LARUE           )
                             )
v.                           )    No. 2:03-0094
                             )
JO ANNE BARNHART,            )
Commissioner of Social Security.  )

To: The Honorable Thomas A. Wiseman, Jr., Senior District Judge

REPORT AND RECOMMENDATION

The plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security Administration denying the plaintiff's applications for Title II Disability Insurance Benefits (DIB) and Title XVI Supplemental Security Income (SSI) as provided by the Social Security Act.

The plaintiff filed initial applications for DIB and SSI disability benefits on July 17, 2000, alleging disability since June 14, 2000. (Tr. 146.) Her applications were denied initially and upon reconsideration. (Tr. 86-89.) A hearing before an administrative law judge (ALJ) was held on April 9, 2002, at which time the plaintiff and her counsel appeared. (Tr. 456-502.) On July 29, 2002, the ALJ issued his decision finding the plaintiff not disabled through the date of the decision. (Tr. 18-25.) On July 18, 2003, the Appeals Council denied the plaintiff's request for review (Tr. 7-11), which became the final decision of the Commissioner.

Pending before the Court is the plaintiff's motion for judgment on the administrative record (Docket Entry No. 11), to which the defendants filed a response (Docket Entry No. 12).

1

I.  STATEMENT OF FACTS

The plaintiff was born on November 17, 1954, making her 47 years old at the time of the hearing.  (Tr. 463.)  She finished the eighth grade.  (Tr. 466.)  The plaintiff reported that she is dyslexic, but can read and write with some limitations.  (Tr. 480-81.)  In the past, she has worked as a cementer, sewing machine operator, pants presser, meat cutter/packager, sweet roll packer, and nurse's aide.  (Tr. 159.)

On May 10, 1991, the plaintiff injured her neck while at work.  (Tr. 469.)  The plaintiff was diagnosed with a herniated disc in her neck.  (Tr. 258.)  Due to her injury, Dr. Everette Howell performed cervical fusion on the plaintiff's neck in 1992.  (Tr. 469.)  After this injury, the plaintiff applied for DIB, which was denied. (Tr. 60.)  However, she received a workers' compensation settlement of $38,000.00.  (Tr. 74.)  The plaintiff claimed that she was unable to work due to nerve damage, headaches, and pain caused by the injury.  (Tr. 71.)

On August 4, 1994, Dr. Ray Hester performed an EMG and found that the plaintiff had a right-sided C-6 radiculopathy with evidence of denervation.  (Tr. 279.)  Dr. Hester opined that "[a]s far as work goes [the plaintiff] is unable to work secondary to severe pain with repeated use of her right arm.  This use can be any kind of mental [sic] activity which will cause her to hurt for several days and disable her from any further activity."[1]  (Tr. 279.)  Despite these complaints, the plaintiff returned to work in January of 1995, and worked until June 14, 2000, the date of her current alleged onset of disability.  (Tr. 146.)

---

[1] The Court assumes that the doctor meant "menial," as opposed to "mental," activity.  This could be a simple transcription error.

The plaintiff asserts that she also injured her lower back while lifting a patient at a nursing home in 1998 (Tr. 432, 471) and while carrying a basket of clothes at home (Tr. 474).[2] In 1999,[3] the plaintiff developed work-related damage to her right hand and thumb. (Tr. 19, 272.) She was diagnosed with carpal tunnel on the right hand and a right trigger thumb. (Tr. 274.) On June 19, 2000, the plaintiff had a carpal tunnel release on her right hand as well as a right trigger thumb release. (Tr. 282.) In May of 2000, after being questioned by a supervisor about her medical condition, the plaintiff asserts that she suffered a psychological breakdown, since her supervisor reminded her of her father, who abused and raped her when she was a teenager. (Tr. 478.)

On June 19, 2000, Dr. James McKinney performed carpal tunnel surgery on the plaintiff's right hand and trigger release surgery on her right thumb. (Tr. 479.) Dr. McKinney reported good results from the carpal tunnel and trigger release surgeries. (Tr. 280.) However, the plaintiff again began to experience pain in her hand and wrist while working at her last job at Micrometals. (Tr. 475.) The plaintiff then was seen by Dr. J.D. Allred, who indicated that she could not sustain even sedentary work due to her injuries. (Tr. 383-86.) Dr. Allred referred the plaintiff to Dr. Everette Howell, who found no serious medical problems. (Tr. 399.) Dr. Howell found that the plaintiff had a mechanical lower back disorder and lumbar strain. (Tr. 399.)

On September 28, 2000, the plaintiff was examined by Dr. Jeffrey Uzzle, a Department of Disability Services (DDS) consultant. (Tr. 294.) Dr. Uzzle found that the plaintiff suffered from a limitation in her range of motion in her spine, but did not suffer atrophy, inflammation, edema, or

---

[2]It is not clear to the Court from the record or the plaintiff's testimony exactly when these injuries occurred.

[3]Although the plaintiff asserts in her motion that she was injured on the job on May 2, 2000, the Court cannot substantiate from the record what injury occurred on May 2, 2000, and the plaintiff's cite to the record does not provide corroboration for her assertion.

3

deformity. (Tr. 295.) He opined that although the plaintiff would have difficulty with prolonged sitting, standing, walking, and lifting more than 20 pounds, she could work eight hours a day doing a combination of these. (Tr. 295.) Dr. Uzzle also found that the plaintiff may have difficulty with certain repetitive movements due to carpal tunnel problems. (Tr. 296.)

On June 12, 2001, the plaintiff was kicked by a horse. (Tr. 486-87.) However, x-rays did not show permanent damage to the plaintiff's foot. (Tr. 388.)

The plaintiff was also treated by Dr. John M. Turnbull, an orthopedic surgeon in practice with Dr. McKinney, and was diagnosed on February 11, 2003, with DeQuervain's Tenosynovitis of the right thumb and right wrist. On February 13, 2003, Dr. Turnbull ordered an MRI of the plaintiff's right shoulder, which showed shoulder joint effusion and a small complete tear of her tendon with degenerative changes in the plaintiff's acromioclavicular joint. See attachments to Docket Entry No. 11.[4]

On September 13, 2001, Dr. William M. Hogan, a psychiatrist, performed a psychiatric evaluation of the plaintiff. (Tr. 367.) Dr. Hogan assessed the plaintiff as having a Class Five level of concentration, Class Four level of adaptive and social functioning and a Class Three level of activities of daily living.[5] (Tr. 367-71.) Dr. Hogan opined at a deposition in the workers' compensation case that the plaintiff was 100% disabled from a psychological standpoint and was

---

[4]Dr. Turnbull's medical records are not part of the administrative record because they were prepared after the hearing before the ALJ.

[5] Dr. Hogan attached photocopies of the diagnostic manual, which the Court assumes is the AMA GUIDE TO EVALUATION OF PERMANENT IMPAIRMENT, used in preparing his September 13, 2001, report. (Tr. 372-73.) According to that source, a Class Five is an extreme impairment and precludes useful functioning. (Tr. 372.) A Class Four is a marked impairment which significantly impedes useful functioning. Id.

4

incapable of performing any gainful employment. See p. 17-18 of Dr. Hogan's deposition, attached to Docket Entry No. 11.

In contrast, Dr. Linda Blazina, Ph.D., performed a consultative psychological examination of the plaintiff on September 20, 2000, and found that her Global Assessment of Functioning (GAF) was in the range of 65-70, indicating only mild symptoms.[6] (Tr. 292-93.) Dr. Edward Workman, a psychiatrist who diagnosed the plaintiff as having a mixed personality disorder and a mixed pain disorder with psychological and physical features, also assessed the plaintiff with a GAF of 65 on April 12, 2002. (Tr. 418-19.) Dr. Workman also noted that he believed that the plaintiff attempted to make herself appear to be worse than she really was (Tr. 417), and that she did not suffer from post-traumatic stress disorder. (Tr. 441-42.) Dr. Workman indicated that the plaintiff's mental problems would, at the most, prevent her from participating in intense social interaction situations (Tr. 441), and found a 20-28% permanent partial disability impairment. (Tr. 445-46.)

The plaintiff's daily activities include feeding her animals, making coffee, bathing, light housework, taking an afternoon walk when she is able, watching television, preparing meals, and washing dishes. (Tr. 208, 215-16, 292.)

At the hearing before the ALJ, held on April 9, 2002, the plaintiff testified that she has been unable to work because of nerve damage of the right arm and shoulder, carpal tunnel syndrome in both hands and arms, tendinitis, degenerative disk disease, constant back, neck, and leg pain, depression, and psychological problems. (Tr. 470-92.) Although the plaintiff had cervical fusion

---

[6]The DSM-IV defines a GAF of 61-70 as exhibiting "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupation, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (American Psychiatric Ass'n et al. eds., 4th ed. 2002).

5

surgery as well as carpal tunnel surgery, and takes medication for her psychological problems and her pain, she testified that her overall condition continues to worsen. (Tr. 486.) The plaintiff testified that her back hurts constantly on a daily basis, and that it is sometimes so bad that she "can't even hardly walk." (Tr. 474.) She testified that the psychological problems stemming from her treatment at Micrometals has caused her to have nightmares and to not want to be around people. (Tr. 478.) The plaintiff testified that after carpel tunnel surgery her right hand "doesn't work as good as the other one" and sometimes swells, but that it is functional. (Tr. 479-80.) The plaintiff also testified that her pain medication helps reduce the pain, but also "knocks [her] out" and makes her "unfunctional." (Tr. 483.) She stated that her depression makes her reluctant to leave the house. (Tr. 484.)

In his decision, the ALJ made the following findings (Tr. 24-25):

1. The claimant met the insured status requirements of the Act as of the alleged disability onset date, June 14, 2000.

2. The claimant has not engaged in substantial gainful activity since the alleged disability onset date.

3. Her "severe" impairments include cervical spinal disc disease, lumbar spinal disc disease, mild residuals of trauma to the dominant right hand, and a borderline personality disorder.

4. The claimant's impairments, considered individually and in combination, do not meet or equal the severity requirements of any impairment set forth at 20 C.F.R. Part 404, Subpart P, Appendix One.

5. Her appearance and demeanor at the hearing were not indicative of an impairment or combination of impairments of the severity alleged, nor was her testimony credible that she experiences pain, depression, side effects of medication, or any other symptoms of statutorily disabling severity.

6. The claimant retains the residual functional capacity for light work without fast-paced or repetitive movements of the dominant hand, overhead reaching or operation of vibrating machinery, with an additional mild nonexertional limitation of inability to tolerate intensive interactions with co-workers or the public.

6

7. The claimant can perform her past relevant work as a pants presser with her residual functional capacity.

8. The claimant is a younger individual.

9. The claimant has a limited education.

10. The claimant has no transferable work skills.

11. If the claimant could perform the full range of light work, considering the vocational factors of age, education and work experience, a directed conclusion of "not disabled" would also result under Rule 202.18, Table Two of Appendix Two to Subpart P, 20 C.F.R. Part 404.

12. Although nonexertional limitations preclude performance of the full range of light work, using the above-cited Rule as a framework for decision making, a significant number of jobs exist in the national economy which could be performed, considering the residual functional capacity and vocational factors, in addition to the past relevant work of pants presser. Examples of such jobs include: security guard; parking lot attendant; driver; vehicle washer; usher; inspector; and general laborer.

13. The claimant has not been under a disability, within the meaning of the Social Security Act, through the date of this decision.

## II. DISCUSSION

A. Standard of Review

The determination of disability under the Act is an administrative decision, and the only questions before this Court are whether or not the decision of the Commissioner is supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching her conclusion. 42 U.S.C. §§ 405(g) and 1382(c)(3); Richardson v. Perales, 402 U.S. 389, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Gibson v. Sec'y of Health, Educ. & Welfare, 678 F.2d 653 (6th Cir. 1982). The Commissioner's decision must be affirmed if it is supported by substantial evidence, even if the Court might have decided the case differently based on substantial evidence to the contrary. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389-90 (6th Cir. 1999). A reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports

7

the Commissioner's findings and inferences. Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Substantial evidence means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion. It is more than a mere scintilla of evidence. Richardson, supra; Le Master v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976). The Court must accept the ALJ's explicit findings and determination unless the record, as a whole, is without substantial evidence to support the ALJ's determination. Houston v. Sec'y of Heath & Human Servs., 736 F.2d 365, 366 (6th Cir. 1984); Hephner v. Mathews, 574 F.2d 359, 362 (6th Cir. 1978).

B. Proceedings at the Administrative Level

The Commissioner must employ a five-step evaluation process in determining the issue of disability. The five steps are as follows: (1) If plaintiff is doing substantial gainful activity, she is not disabled; (2) If plaintiff is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled; (3) If plaintiff is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry; (4) If plaintiff's impairment does not prevent her from doing her past relevant work, she is not disabled; (5) Even if claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity (RFC) and vocational factors, such as age, education, and past work experience, she is not disabled.[7] See 20 C.F.R. § 404.1520. See also, Tyra v. Sec'y

---

[7] This latter factor is considered regardless of whether such work exists in the immediate area in which plaintiff lives or whether a specific job vacancy exists or whether the plaintiff would be hired if she applied. Ragan v. Finch, 435 F.2d 239, 241 (6th Cir. 1970).

8

of Health & Human Servs., 896 F.2d 1024, 1028-29 (6th Cir. 1990); Farris v. Sec'y of Health & Human Servs., 773 F.2d 85, 88-89 (6th Cir. 1985); Mowery v. Heckler, 771 F.2d 966, 969-70 (6th Cir. 1985); Houston, supra.

The original burden of establishing disability is on the plaintiff, and impairments must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. Id. See 42 U.S.C. § 1382c(a)(3)(C); 20 C.F.R. §§ 404.1512 (a), (c), 404.1513(d); Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 214 (6th Cir. 1986); Tyra, 896 F.2d at 1028-29. However, the Commissioner is required to consider the combined effects of impairments that individually are not severe but cumulatively may constitute a severe impairment. 42 U.S.C. § 432(d)(2)(C); Foster v. Bowen, 853 F.2d 483, 490 (6th Cir. 1988).

Once the plaintiff establishes a prima facie case that she is unable to perform her prior relevant employment, the burden shifts to the Commissioner to show that the plaintiff can perform other substantial gainful employment, and that such employment exists in the national economy. Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980); Hephner, supra. To rebut a prima facie case, the Commissioner must come forward with particularized proof of the plaintiff's individual vocational qualifications to perform specific jobs. O'Banner v. Sec'y of Health, Educ. & Welfare, 587 F.2d 321 (6th Cir. 1978).

Analyzing the evaluation process at step one, the ALJ found that the plaintiff had not engaged in substantial gainful activity since June 14, 2000. (Tr. 24.) At step two, the ALJ determined the evidence established that the plaintiff had cervical spinal disc disease, lumbar spinal disc disease, mild residuals of trauma to the dominant right hand, and a borderline personality disorder, and that a combination of the impairments constituted severe impairments. Id. At step three, the ALJ found that the medical evidence in the record did not indicate that the plaintiff had

9

any impairments that met the criteria of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. At step four, the ALJ determined that the plaintiff could perform her past relevant work as a pants presser with her residual functional capacity. (Tr. 25.)

When asked if there were other jobs in the national economy that could be performed by an individual with the plaintiff's described residual functional capacity, a Vocational Expert (VE) identified a significant number of jobs. Id. Specifically, the VE cited the examples of jobs at the light and sedentary level, including security guard, parking lot attendant, driver, vehicle washer, usher, inspector, and general laborer. (Tr. 25, 496-97.) Therefore, the ALJ concluded that the plaintiff was not disabled within the meaning of the Social Security Act, and not entitled to DIB or SSI. (Tr. 25.)

C. The Plaintiff's Assignments of Error

1. Dr. Allred

The plaintiff first argues that the ALJ erred by failing to give controlling weight to the opinion of her treating physician, who opined that the plaintiff could not sustain even sedentary work due to her impairments. (Tr. 383-84.) The plaintiff also contends that the ALJ erred in determining that her spinal injuries do not meet the severity impairments at 20 C.F.R. Part 404, Subpart P, Appendix One.

Opinions of treating physicians are entitled to great weight and are generally entitled to greater weight then the contrary opinions of a consulting physician who has examined the claimant on only a single occasion. See Farris v. Sec'y of Health & Human Servs., 773 F.2d 85, 90 (6th Cir. 1985); Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985). The opinion of a non-examining physician is generally entitled to little weight if contrary to the opinion of a treating physician.

Shelman v. Heckler, 821 F.2d 316, 321 (6th Cir. 1987). However, a treating source's opinion on the issue of the nature and severity of an impairment is entitled to complete deference only if well supported by medical findings and not contradicted by other evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2); Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 287 (6th Cir. 1995). If an ALJ chooses to deviate from the treating physician rule and reject the opinion of a treating physician, he must articulate good reasons for doing so. Bogle v. Sullivan, 998 F.2d 342, 347 (6th Cir. 1993); Shelman v. Heckler, 821 F.2d 316, 321 (6th Cir. 1987).

Here, the ALJ specifically rejected the assessment of Dr. Allred because his treatment records, as well as the record as a whole, do not support his findings. (Tr. 21-22.) The ALJ noted:

> [Dr. Allred] referred the claimant to Everette I. Howell, Jr., M.D., a neurosurgeon, on May 7, 2001, for a more expert opinion on her spinal status than he could offer.
>
> Dr. Howell found some limitations of lumbar and cervical spinal motion. However, his notes contain the statement, "SERIOUS MEDICAL PROBLEMS: None." He indicated that she had mechanical low pack pain and a lumbar strain, but no spinal lesion requiring surgery.

(Tr. 21, 398-99). Furthermore, the ALJ found that "[s]ince Dr. Allred's pessimistic assessment is not supported by either his treatment records or the findings of the consulting specialist to whom he referred the claimant, it is not accorded significant weight." (Tr. 21.) The ALJ also discredited Dr. Allred's assessment since "[t]he weight of the evidence, including the documented range of daily activities, establishes that [the plaintiff] retains a physical functional capacity for light exertion that does not require fast-paced or overhead repetitive movements of the dominant hand or operation of vibrating machinery." (Tr. 22.)

The Court finds that the ALJ articulated good reasons and provided substantial evidence for rejecting the opinion of Dr. Allred, since it was contradicted by other evidence in the record and is

inconsistent with the record as a whole. See 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2); Cutlip, 25 F.3d at 287; Bogle, 998 F.2d at 347; Shelman, 821 F.2d at 321.

2. Vocational disability

The plaintiff next argues that the ALJ failed to give controlling weight to the resolution of the plaintiff's workers' compensation claims, reflected in the orders entered January 18, 1993, and June 17, 2003, respectively. (Tr. 246-49.) These orders combine to show that the plaintiff retains a 101.3% vocational disability.[8] However, a state workers' compensation assessment of disability is not controlling in a Social Security disability benefits case. 20 C.F.R. § 404.1504; McCann v. Califano, 621 F.2d 829, 831 (6th Cir. 1980).

The ALJ considered the plaintiff's claims of pain and injury from her workplace injuries. He concluded that "[t]he weight of the evidence establishes that the right hand symptoms are mild" and that the plaintiff "retains a functional capacity for light exertion that does not require fast-paced or overhead repetitive movements of the dominant hand or operation of vibrating machinery." (Tr. 22.)

Although the ALJ was not required to give controlling weight to the resolution of the plaintiff's workers' compensation claims, he adequately considered the effects of the plaintiff's workplace injuries on her ability to do substantial gainful activity.

---

[8] The plaintiff's first worker's compensation case was resolved by settlement, in which the defendant agreed to pay $38,000.00, representing a 59.3% disability to the body as a whole. The second worker's compensation case was also resolved by settlement, in which the defendant agreed to pay $40,000.00, representing a 42% permanent partial disability to the body as a whole. The June 17, 2003, claim does not appear to be included in the record, but was submitted as an attachment to the plaintiff's motion in this case.

3. Effect of pain on the plaintiff's ability to perform work activity

The plaintiff argues that the ALJ failed to give a rational basis for his evaluation of the plaintiff's pain symptoms, and also failed to take into account the plaintiff's limited ability to perform work activity due to her constant pain.

A plaintiff's subjective complaints of pain do not alone establish disability. 20 C.F.R. § 404.1529(a). Rather, the plaintiff must show objective evidence of an impairment that could reasonably be expected to result in the alleged pain. Id.; Soc. Sec. Rul. 95-5p, 1995 WL 670415 (Oct. 31, 1995).

In assessing the severity of alleged pain, an ALJ may consider household and social activities. See 20 C.F.R § 404.1529(c)(3); Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 (6th Cir. 1986). See also, Soc. Sec. Rul. 96-7p, 1996 WL 374186 (Jul. 2, 1996). In evaluating subjective complaints of pain, the determination of disability based on pain depends largely on the credibility of the plaintiff. Houston v. Sec'y of Health & Human Servs., 736 F.2d 365, 367 (6th Cir. 1984).

The ALJ found that the plaintiff's allegations of disabling pain were not credible. Specifically, the ALJ noted that:

> The subjective allegations of disabling pain and functional limitations are not credible when they are examined under the guidelines set forth in the Social Security Regulations at 20 C.F.R. 404.1529. My observations during the hearing were that she appeared to be poised and exhibited no outward signs of significant physical or mental functional limitations, nor did there appear to be any apparent deficits of memory or concentration.
>
> Her documentary reports provide evidence of a significantly greater range of daily activities than was averred in the hearing testimony. She walks for exercise, drives, shops for groceries, and does daily household chores such as laundry, dusting, feeding the animals and meal preparation for herself and her husband.

(Tr. 20).

13

In this case, the ALJ did not ignore the plaintiff's allegations of pain. Instead, he found that these allegations were not credible. (Tr. 22.) He used the plaintiff's documented range of daily activities, as well as recorded beneficial results from treatment and surgeries (Tr. 20), to determine that the plaintiff's pain does not preclude her ability to perform work activity. Since the ALJ offered substantial evidence to support his decision, the Court must accept his determination. See Houston v. Sec'y of Health & Human Servs., 736 F.2d 365, 366 (6th Cir. 1984); Hephner v. Mathews, 574 F.2d 359, 362 (6th Cir. 1978).

4. Dr. Hogan

Finally, the plaintiff contends that the medical reports and deposition of Dr. William Hogan show the plaintiff to be unable to perform substantial gainful activity. The ALJ chose to discount Dr. Hogan's assessments because of internal inconsistencies. (Tr. 22.) For example, Dr. Hogan found the plaintiff to have a GAF of 53,[9] which translates to moderate symptomatology, but still reported that the plaintiff was unable to perform substantial gainful activity. (Tr. 367-71.) The ALJ noted that it "stands to reason that moderate symptomatology would not be completely disabling or result in marked and/or extreme limitations in most areas of consideration." (Tr. 22.) Dr. Hogan's GAF evaluation also differed from that of Dr. Linda Blazina, who found the plaintiff's GAF to be in the range of 65-70.[10] (Tr. 292-93.)

---

[9]The DSM-IV defines a GAF of 51-60 as exhibiting "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., no friends, unable to keep a job.)" DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (American Psychiatric Ass'n et al. eds., 4th ed. 2002).

[10]See supra n. 5.

Furthermore, the ALJ found that "Dr. Hogan's pessimistic appraisals are further refuted by the opinions resulting from an April 12, 2002, examination performed by Edward Workman, M.D." (Tr. 22.) In conclusion, the ALJ noted,

> [t]he opinions of the mental health treating sources, the examining Social Security psychologist (Dr. Blazina), the non-examining Social Security psychiatrist and psychologist (Drs. Regan and Welch)[11] and the most eminently qualified specialist who examined the claimant during her most recent workers' compensation proceedings (Dr. Workman) are all consistent with GAF remaining at level 65, despite alleged symptoms of depression and/or anxiety. There have been no episodes of significant mental decompensation, and she experiences no more than mild mental functional limitations in daily activities, social interactions or concentration, persistence or pace. She only has a mild mental functional limitation requiring her to avoid intensive social interactions.

(Tr. 23.)

The Court finds that the ALJ articulated good reasons to refute Dr. Hogan's opinion and that his rejection was supported by substantial evidence.

### III. RECOMMENDATION

For the above stated reasons it is recommended that the plaintiff's motion for judgment on the administrative record (Docket Entry No. 11) be DENIED, and that the Commissioner's decision be AFFIRMED.

Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of receipt of this notice, and must state with particularity the specific portions of this Report and Recommendation to which the objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District

---

[11] Dr. William Regan provided an assessment on October 19, 2000 (Tr. 299-314), and Dr. Larry Welch, Ed.D., provided an assessment on December 19, 2000 (Tr. 340-55).

Court's order.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

                                    Respectfully submitted,

                                    */s/ Juliet Griffin*

                                    JULIET GRIFFIN
                                    United States Magistrate Judge